UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAN DIXON and HEIDI DIXON,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF COEUR d'ALENE,<br><br>　　　　　　Defendant. | Case No. 2:10-cv-00078-LMB<br><br>**MEMORANDUM DECISION AND ORDER** |

This matter is before the Court on Defendant's Motion for Judgment Notwithstanding the Verdict, New Trial or in the Alternative, Remittitur (Dkt. 146). The Court has considered the parties' briefs and oral arguments of counsel.  The following Memorandum Decision and Order granting and denying relief in part resolves those issues.

## BACKGROUND

Plaintiff Dan Dixon is a former Lieutenant with the City of Coeur d'Alene  Police Department ("City").  In December 2008, allegations were made that Dixon had falsified timekeeping records and intentionally violated a subordinate officer's rights under a labor agreement.  In January 2009, the City began an internal investigation into these allegations. As part of the investigation, and pursuant to City policy and Dixon's

employment agreement, Dixon submitted to two independent polygraph exams.  Both polygraph examiners determined that Dixon was deceptive in his answers.

On June 10, 2009, at the completion of the investigation, police investigators made the determination that Dixon was in fact lying, that he had falsified his timekeeping records, and that he manipulated a subordinate officer's schedule.  This determination prompted the Chief's recommendation that Dixon's employment be terminated.

On June 24, 2009, following a pre-termination hearing, City Personnel Officer Jon Ingalls determined, however, that in lieu of termination Dixon should be demoted two ranks from lieutenant to patrol officer with a similar reduction in pay.

Believing the demotion amounted to constructive discharge, Dixon did not return to work, and the City personnel officer conducted a second pre-termination hearing. Following that hearing, Ingalls determined that sufficient cause existed to terminate Dixon's employment for refusing to report to duty.  The City then terminated Dixon's employment as a Coeur d'Alene police officer.

On August 4, 2009, Dixon and his wife, Heidi, filed this action against the City, alleging constructive discharge; violation of substantive due process rights in his employment; breach of his employment contract; negligence in investigation and termination of his employment; inadequate supervision and training of City employees; and negligent infliction of emotional distress.  Plaintiffs sought damages under 42 U.S.C. § 1983 and under state law claims.  The City denied any wrongdoing.

The case was tried before a seven-person jury starting October 18, 2011.  On October 26, 2011, the jury returned its verdict in favor of the Dixons.  The Jury's verdict awarded $2,763,541 in economic damages and $500,000 in non-economic damages each to Dan and Heidi Dixon, for a total verdict of $3,763,541.  On October 27, 2012, the Clerk of the Court entered judgment in favor of the Dixons in accordance with the jury verdict. (Dkt. 132).

On November 22, 2011, Defendant filed a motion to stay the judgment, which was granted on December 19, 2011. (Dkts. 144 & 158).  Thereafter, Defendant filed the pending motion for new trial and notice of appeal on November 23, 2011.  (Dkts. 146 & 150).

## MOTION FOR JUDGMENT OR NEW TRIAL

### A.    Standard of Review

A judgment notwithstanding the verdict "is only appropriate if the evidence, viewed in the light most favorable to the nonmovant, permits only one decision, which is contrary to that reached by the jury." *Passantino v. Johnson Consumer Products, Inc.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000).  "A District Court's refusal to grant a new trial should be reversed only if it constitutes an abuse of discretion." *Id*.  A motion will be granted on this ground "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id*.

**B.      Analysis**

The City raises nineteen issues of error.  The Court addresses the most significant legal issues by category below. The remainder are summarily denied as not having merit.

**1.      Polygraph**

Before trial, after conducting a hearing on the matter, the Court granted Plaintiff's Motion in Limine to Exclude Polygraph Evidence. (Dkts. 18 & 21). The Court determined that the polygraph evidence was "relevant for obvious reasons," but concluded under Fed. R. Evid. 403 that the "potential prejudice substantially outweighs the probative value."  The City argues that the Court erred in this determination.

The City further argues error in the denial of the its motion to reconsider on October 6, 2011, and its renewed motion/offer of proof on October 19, 2011.  In this respect, the City contends that the Court's rulings prevented the City from being able to defend the claim that its investigation was arbitrary, that it negligently supervised or trained its employees, or that it failed to follow its policies.  The City further argues that the Plaintiffs' expert "opened the door" by testifying that he saw no evidence in the entire file he reviewed (which included the polygraph examination results) that Dixon had been dishonest.

The Court has previously set forth its analysis and decision on the polygraph evidence in detail. (*Memorandum Decision and Order*, Dkt. 51, pp, 8-9).  In sum, the Court balanced the probative value of the evidence against the potential of prejudice, and

concluded that the potential of prejudice was too great to allow admission of the opinions of the polygraph examiners into evidence.

The Court carefully considered the testimony of Plaintiffs' expert concerning the investigation, as well as the City's argument that its ability to defend was hampered by the exclusion of the tests.  Put simply, the Court continues to find, and thus conclude, that the prejudicial effect of the polygraph evidence substantially outweighs their probative value.  At no point, before, during, or after trial, has sufficient evidence or testimony arisen to alter the Court's prior Rule 403 analysis and ruling on the issue. Thus, the City's motion is denied with regard to revisiting the issue of admissibility of the polygraph examinations.

### 2.    Jury Instruction on Negligence Standard Under Idaho Law

The City argues that the Court erred in failing to instruct the jury on "the state law standard for governmental liability for negligence under the Idaho Tort Claims Act, I.C. § 6-904," and that Final Jury Instructions Nos. 37 and 38 were incorrect statements of the law as applied to a municipality.

Plaintiff's claim regarding supervision and training was presented at trial and submitted to the jury as a § 1983 deliberate indifference claim, not a state law negligence claim. Thus, the City's argument that it is immune from the state law negligence claim is moot.  Moreover, a governmental entity clearly can be liable under the Idaho Tort Claims Act for the negligence of its employees the same as a private entity or individual may be

liable for money damages under state law for negligently supervising its employees.

*Miller v. Idaho State Patrol*, 252 P.3d 1274, 1290 (Idaho 2011) (citing *Kessler v.*

*Barowsky*, 931 P.2d 641 648 (1997) and *Doe v. Durtschi*, 716 P.2D 1238, 1245 (Idaho

1986)).  Neither theory requires a plaintiff to prove malice or criminal intent. *See Miller*,

252 P.3d at 1290.

    As for negligent infliction of emotional distress, the Court finds no error in the

instructions given. To the extent there could be immunity under the Idaho Tort Claims

Act as the City is arguing, it would require a showing of "malice or criminal intent" for

actions that fall under the "planning" function.

    The "planning prong" of I.C. § 6-904 provides governmental immunity for:

> any act or omission . . . based upon the exercise or performance or the failure
> to exercise or perform a discretionary function or duty on the part of a
> governmental entity or employee thereof, whether or not the discretion be
> abused.

I.C. § 6-904(1).  However, not all decisions involving discretion render the action a

"discretionary function" under the Act.  In determining if it is in fact a discretionary

function, the nature and quality of the challenged actions must be examined. For example,

> Routine, everyday matters not requiring evaluation of broad policy factors will
> more likely than not be 'operational.'  Decisions and actions which involve a
> consideration of the financial, political, economic and social effects of a given
> plan or policy will generally be 'planning' and fall within the discretionary
> function exception.

*Bingham v. Franklin County*, 796 P.2d 527, 532 (Idaho 1990)(citing *Ransom v. City of*

*Garden City*, 743 P.2d 70,73 (1987)(quotations omitted).

Here, the decision to terminate Dixon did not require evaluation of broad policy factors. As such, the City's decision to terminate Dixon does not fall under the "planning prong" exception for government immunity because it is simply operational, not a "discretionary function" as defined in I.C. § 6-904(1). Therefore, under the circumstances, the City was not entitled to an immunity instruction. Likewise, there was no error in the Court's instruction to the jury regarding Plaintiffs' claim that the City's actions negligently inflicted emotional distress upon them.

### 3.     Deliberate Indifference Jury Instruction - Single Incident Liability Theory

The City asserts error in the jury instruction regarding the inadequate supervision and training claim as a § 1983 deliberate indifference claim instead of a state law negligence claim.  Plaintiffs argue that the City's position is inapposite, that the inadequate supervision and training claim was under § 1983 only and was not submitted to the jury as a state law negligence claim. Plaintiffs maintain that the only state law claim submitted to the jury, per Plaintiffs' requested instructions, was the claim for negligent infliction of emotional distress.

The City contends that if Plaintiffs' claim of inadequate training and supervision is a § 1983 claim of deliberate indifference, then Plaintiffs failed to meet their burden as a matter of law.  The city posits that Plaintiffs presented no evidence of a pattern of prior misconduct leading to constitutional violations.  The City maintains that without this evidence, Plaintiffs' claim would have to have been made under the "single incident"

theory of liability, which the City submits does not apply in this case, and even if it does apply, the Court erred in failing to instruct the jury that in order to recover Plaintiffs had to show a "patently obvious constitutional violation" under *Canton v. Harris*, 489 U.S. 378 (1989).

In *Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011), the Supreme Court defined how a plaintiff can establish deliberate indifference, either through a pattern of conduct or the "single incident" theory of liability. It is well established that "*Connick* reaffirmed the possibility – left open in *Canton v. Harris*, 489 U.S. 378 (1989) – that there are circumstances in which a need for training is so obvious that a city that fails to provide it may be held to have been deliberately indifferent even without a pattern of constitutional violations by city employees." *Moss v. United States Secret Service*, 675 F.3d 1213, 1231-32 (9th Cir. 2012) (citing *Connick v. Thompson*, 131 S.Ct. 1350, 1361 (2011)).

The Supreme Court in *Connick* held that a district attorney was entitled to presume that an assistant attorney had been adequately trained in the law such that the likelihood of violating a defendant's *Brady* rights was not "patently obvious", and thus, the failure to provide training on these constitutional rights did not amount to deliberate indifference. *Connick*, 131 S.Ct. at 1361.  The City argues in this case, that it is entitled the same presumption; that is, that the officers who conducted the internal investigation had been adequately trained based on the evidence that they attended dozens of seminars throughout their careers, had been promoted to their respective ranks of captain and chief,

and had conducted "scores of prior internal investigations without incident."
(Defendant's Supplemental Brief, Dkt. 174 at 6.)

This Court's instruction on deliberate indifference is a correct statement of the law under the Supreme Court's holding in *Connick*, 131 S.Ct. at 1361, and *Canton*, 489 U.S. at 409. The issue raised by the City's motion is whether the Court erred in not giving a more specific instruction to the jury as to the different ways in which a plaintiff could prove deliberate indifference.  The Court concludes that it was not error.

As an initial matter, the City did not request instructions regarding deliberate indifference generally, nor did it request a more specific instruction on the single incident theory of liability.  Regardless, the facts of this instant case fall well within the exception outlined in *Canton*, and thereafter affirmed by the Supreme Court in *Connick*.  In this instant action, Plaintiffs were not required to establish a pattern of violations to support their claim of deliberate indifference.  Thus, the general deliberate indifference instruction that was given at trial was an accurate statement of the law.  Put another way, it was not necessary under these facts for Plaintiffs in this action to have proven a pattern of prior violations to support the jury's finding of deliberate indifference.  Accordingly, there was no error in failing to instruct the jury as urged by the City.

After a careful review of the entire record, the Court concludes that the evidence presented to the jury supports a finding of "circumstances in which a need for training is so obvious that a city that fails to provide it may be held to have been deliberately

indifferent even without a pattern of constitutional violations by city employees." *Moss*, 675 F.3d at 1232.  As in the scenario set forth in *Canton*, there is no reason to believe that police officers would possess training on the constitutional rights associated with employment.  Rather, it is predictable that an officer untrained in employment rights, even those charged with conducting internal investigations, could violate the rights of an employee under investigation.  The failure to provide training on the constitutional parameters of an internal investigation could amount to deliberate indifference, which the jury found as a fact in this instant case.  In the Court's well-formed view, substantial evidence supports the jury's finding.

In summary, the Court concludes that the single incident theory of liability is supported by substantial evidence presented to the jury by Plaintiffs during the two week trial.  In addition, the jury was properly instructed on the law of deliberate indifference.  Accordingly, the City's motion is denied on these asserted grounds.

### 4.    Evidence of Arbitrary Actions

The City argues that the Court erred in denying its motion for directed verdict where there was no evidence that its conduct was arbitrary because Dixon admitted that he committed errors on his time cards, and acknowledged that this could result in discipline.  Thus, the City contends that its actions could not have been arbitrary.

The Court disagrees.  The jury was properly instructed on the law of constructive discharge and Dixon's § 1983 claim for deprivation of his substantive due process rights

to his chosen employment – both of which require a finding that his dismissal, or termination, was not based on an arbitrary reason.  Final Jury Instruction Nos. 30 and 32. "Arbitrary" was defined as "synonymous with unreasoned, bad faith, or a failure to exercise honest judgment." Final Jury Instruction No. 33. "An arbitrary action or decision is one founded on prejudice or preference rather than on reason or fact." *Id*. The evidence that time card errors could be used as a basis for discipline does not foreclose the possibility that the City's termination of Dixon's employment was arbitrary.  This is not an action about whether the City had any reason to investigate.  Rather, it is a question about how it conducted the investigation and the conclusions it reached regarding discipline. After presiding at trial, and thereafter conducting an exhaustive review of the record, the Court finds, and thus concludes, that there is substantial evidence in the record to support the jury's finding that Dixon's termination was "arbitrary."

     **5.**     **Constructive Discharge**

     The City contends that no reasonable juror could conclude that Dixon was constructively discharged.  The Court disagrees and finds, and thus concludes, that there was substantial evidence supporting the jury's finding that Dixon was constructively discharged.

     The City's reasoning restate arguments that have already been presented and rejected by the Court. (*Memorandum Decision and Order*, Dkt. 70) Evidence of Dixon's

alleged constructive discharge was sufficient to support the jury's verdict that Dixon was constructively discharged.  Accordingly, on this basis, the City's motion is denied.

**6.     Negligent Supervision and Training**

The City argues that there was no evidence that it was negligent in its supervision and training of its employees and that there was error in the instruction given regarding negligent supervision and training.  According to the City, Plaintiffs' claim in this regard was one under state law, and there was error in the Court's instruction because it was a statement of federal law.

The claim that went to the jury was one of inadequate supervision and training under 42 U.S.C.  § 1983, not a state law negligence claim.  In this regard, in paragraph 32 of Plaintiff's Complaint, under the heading "Violation of Substantive Due Process - 42 U.S.C. § 1983," the following claim is set forth:

> That Defendant Coeur d'Alene failed to adequately train supervisory employees on how to insure that the property and liberty interests of city employees, including Plaintiff, were not violated. Said training was obviously necessary in order to avoid constitutional violations. Defendant Coeur d'Alene's failure to train was due to a municipal policy of deliberate indifference towards protecting the constitutional rights of its employees.

(*Complaint*, Dkt. 1 at 10).  Thus, the City's contention that Plaintiff had plead only under state law negligence is incorrect.  Moreover, substantial evidence was presented to the jury to support its verdict that the City was deliberately indifferent to Plaintiff's constitutional rights to due process by inadequately training and supervising its employees. Accordingly, the City's motion on this basis is denied.

7.      **Failure to admit trial exhibits NNN and MMM.**

There was no error in the preclusion of Exhibits NNN and MMM.  Exhibit NNN, a report on time-card discrepancies for all Lieutenants at the Coeur d'Alene Police Department, was appropriately precluded based on untimely disclosure and prejudice to Plaintiffs.  However, the related testimony summarizing the evidence was allowed. Accordingly, the City was not prejudiced by exclusion of the exhibit.

Exhibit MMM, evidence relating to Dixon's 2005-2007 time-cards, was properly excluded as irrelevant and unduly prejudicial.  Dixon's demotion, the related termination of employment, and the investigation leading to those decisions, were based entirely on actions that took place in 2008.  Any alleged prior misconduct, namely Exhibit MMM, was not considered by the City and as such is irrelevant for the purposes of this action. Further, admission of such evidence would serve only to confuse issues, mislead jurors and unfairly prejudice Plaintiff.

Neither the exclusion of Exhibit NNN, nor of Exhibit MMM warrant a new trial or judgment notwithstanding the verdict.  Accordingly, this portion of the City's motion is denied.

8.      **Jury Misconduct**

The City argues that the jury committed misconduct warranting a new trial based on alleged evidence of juror prejudice or bias.  The City points to the short time of deliberations, just over two hours, and the fact that the jury awarded $500,000 to each

plaintiff in non-economic damages when Plaintiffs only requested $300,000 each as proof that the panel had made up their mind prior to beginning deliberations.  The City further claims that one of its witnesses, former Chief of Police Wendy Carpenter, overheard two jurors deliberating prior to the close of evidence.  The City also presents evidence from a private investigator who interviewed two jurors several days after the jury returned its verdict, and a "blog" entry, that it contends was made by a juror, all of which the City argues show that the Jury improperly deliberated before the trial was concluded and submitted to them.

The Court has carefully reviewed the evidence submitted in support of the City's contention that the jury committed misconduct and does not agree.  To the point, Juror Linda Obligato told the City's investigator specifically that the jury was "not allowed to discuss the case until that very moment that [the jury was charged]."  (Exhibit C to Haman Affidavit, Dkt. 148-6 at 7.)  Similarly, when the City's investigator queried if "the case was discussed any time before deliberation," Obligato responded, "No. No."  In the same manner, Juror Karen DiMarco told the City's investigator that "as a jury we were really, really careful ... not to even hardly look at each other during breaks or anything until we were finally told that we could finally begin to [deliberate]."  (*Id*. at 20).

The affidavit of Wendy Carpenter provides no detail whatsoever into what was allegedly said by jurors, or which jurors were supposedly talking about the case.

(Carpenter Affidavit, Dkt. 149).  The Carpenter Affidavit is insufficient to even infer juror misconduct.

The blog comments are even more tenuous, especially considering that there is no basis to conclude that the statement was even made by a juror. (Exhibit B to Haman Affidavit, Dkt. 148-5)  The City's evidence with regard to juror misconduct is vague, speculative, and wholly insufficient to conclude juror misconduct occurred.  Accordingly, the City's motion is denied with respect to this basis.

## ALTERNATIVE MOTION FOR REMITTITUR

### A.    Standard of Review

In considering this motion, the Court must view the evidence in the light most favorable to Plaintiffs, as the non-moving parties.  *See Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983).  Further, it is settled beyond reasonable dispute that the jury's verdict must be upheld if supported by substantial evidence.  *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).  Substantial evidence is relevant evidence reasonable minds might accept as adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.  *Watec Co., Ltd. v. Liu,* 403 F.3d 645, 651 n. 5 (9th Cir. 2005).  The Court cannot weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists.  *Id*.  Ultimately, the Court must determine if the damage award is "grossly excessive or monstrous, clearly not

supported by the evidence, or only based on speculation and guesswork." *Los Angeles Mem'l Coliseum Comm'n v. Nt'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986); *see also Del Monte Dunes at Monterey, Ltd. v. Monterey*, 95 F.3d 1422, 1435 (9th Cir.1996) (A jury's damages verdict must be upheld unless it is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guess work.").

The Court has discretion to grant a remittitur, reducing the damages to the maximum authorized under the evidence, and then offer Plaintiffs the choice of accepting a remittitur (a reduction) of the award in lieu of a new trial on the issue of the damages only. *Morgan v. Woessner*, 997 F.2d 1244 (9th Cir. 1993); *Munguia v. Grelyn of Maui, LLC*, 2011 WL 1364026, *26 (D. Haw. 2011).

**B.    Analysis**

**1.    Future Lost Earnings**

In the alternative, the City asks the Court to reduce the amount of damages awarded to the Dixons as clearly excessive, not supported by the evidence and based on speculation and guesswork.  The Court agrees that a portion of the damages awarded by the jury was based on speculation and is not supported by the evidence.  Specifically, the jury's award of damages for future lost earnings appears to have been founded upon the basis that Dixon would have been promoted to the rank of Captain by 2013, and would have retired at 60 years of age in that position.

Plaintiffs' damages expert, Erick West, testified that if Dixon remained a lieutenant, his total economic loss[1] would be $2,002,486 if Dixon retired at age 51, and $2,238,899 if he retired at age 60.  (Expert Report of Erick West, Dkt. 101-4, 1) West opined that if Dixon were promoted to Captain by January 1, 2013, his total economic loss would be $2,388,306 if he retired at age 51, and $2,737,926 if he retired at age 60. (Id.)  West's expert report contained a chart summarizing Dixon's economic loss, which the Court includes here for illustration:

| Opinions and Conclusions | | | | |
|---|---|---|---|---|
| | *Remain Lieutenant* | | *Captain by 1/1/2013* | |
| | Retire at 51 *(Schedule I)* | Retire at 60 *(Schedule II)* | Retire at 51 *(Schedule III)* | Retire at 60 *(Schedule IV)* |
| Past Lost Wages & Benefits | $   188,711 | $   188,711 | $   188,711 | $   188,711 |
| Future Lost Wages & Benefits | 807,277 | 1,352,373 | 952,542 | 1,667,100 |
| Total Lost Wages & Benefits | $   995,988 | $ 1,541,084 | $ 1,141,253 | $ 1,855,811 |
| Future Lost Pension Benefits | 1,006,498 | 697,815 | 1,247,350 | 882,115 |
| Total Loss | $ 2,002,486 | $ 2,238,899 | $ 2,388,603 | $ 2,737,926 |

(Id. at 1). The City did not present evidence at trial regarding economic loss.

After thoroughly reviewing the record, the Court concludes that there was sufficient evidence that Dixon would retire at 60 years of age, but there was insufficient evidence to support a factual finding that he would have retired in the rank of Captain. In the Court's view, this finding by the jury is speculative given that the evidence at trial was

---

[1] "Total economic loss" represents past lost wages and benefits, future lost wages and benefits, and future lost pension benefits.

that Dixon would have to apply for and pass the test to be promoted to a Captain position. There is simply not sufficient evidence to support that Dixon would be the only, or the top candidate for the position if it did become available, or that he was otherwise more likely than not to have received the promotion at any specific time.

The finding that Dixon would have been promoted to Captain to justify this basis for calculating his future damages was based on speculation and not upon evidence presented at trial. Rather, Plaintiff's economic damages should be based on his retirement at age 60 at the rank of lieutenant. The City's motion for remittitur is granted in this regard, and Plaintiffs' economic damages will be reduced by $499,027.

Accordingly, Plaintiffs shall have the option of: 1) accepting the future damages award in the amount of $2,238,899, which is a reduced amount from Dixon's supposed promotion to Captain, for a total award, including general damages, of $3,238,899; or 2) proceed to a new trial limited solely on the issue of Dixon's future economic damages.

Plaintiffs shall have twenty days from the date of this decision to either accept or reject the remittitur.  In the meantime, the Court will withdraw the Judgment (Dkt. 132) previously entered in the amount of $3,763,541.  If Plaintiffs accept the remittitur, the Court will enter an Amended Judgment at that time. If Plaintiffs reject the remittitur, the Court will immediately proceed to trial only on the issue of future economic damages.

2.      **Non-economic Damages**

With regard to the non-economic damages, the City's motion is denied. There is substantial evidence supporting the jury's award of $500,000 to each plaintiff.  The jury was not bound by Plaintiffs' counsel's suggestion during closing argument that the amount be less. Further, the Court rejects this as a basis for finding that the non-economic portion of the verdict was grossly excessive or monstrous as argued by the City.  A "[j]ury is entitled to disregard the amount asked for when there was other evidence from which the jurors could draw their own conclusions."  *Glovatorium, Inc. v. NCR Corp.,* 684 F.2d 658, 664 (9th Cir. 1982).

There is no question that the jury awarded a significant amount of money to the Dixons as general damages, perhaps more than the Court would have done under similar circumstances.  However, that is not the legal standard or what should guide the determination of this issue.  In this regard, the law is clear, in remitting a judgment the trial court is to allow "the maximum amount sustainable by proof."  *D&S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982). Although it is possible to draw a contrary conclusion, the awards of general damages to Dixon and his wife, while admittedly large, are neither monstrous nor grossly excessive. Likewise, the awards are supported by the evidence and are not based on speculation or guesswork.

After carefully analyzing this issue from every possible perspective, considering controlling law, the testimony of witnesses at trial, evidence presented, and arguments of

counsel, the Court has come to the conclusion that the jurors, upon whom that great responsibility rests as the conscience and voice of the community, have that legal duty. The Court is not willing, nor allowed by law, to substitute its judgment for the considered determination of the jurors on this particular issue. To do so would invade the province of the jury to determine damages. *Occidental Consl. Min. Co. v. Comstock Tunnel Co.*, 125 F. 244, 245 (C.C. Nev. 1903) ("The matter of assessing the damages is ... exclusively within the province of the jury to determine, and the court should never interfere with the verdict, unless the amount is so excessive as to indicate passion and prejudice on the part of the jury, and cannot be accounted for in any other manner.")

## CONCLUSION

Based in the foregoing, the City's Motion for a New Trial or Judgment Notwithstanding the Verdict shall be denied, and the City's Alternative Motion for Remittitur, shall be granted with respect to the jury's damages award calculated based on Dixon's promotion to Captain.  The motion shall be denied in all other respects.

The Judgment shall be withdrawn pending Plaintiff's decision whether to accept or reject the remittitur.

## ORDER

IT IS HEREBY ORDERED:

1.     Plaintiffs' Motion for Leave to file Excess Pages (Dkt. 160) is GRANTED.

2.      Plaintiffs' Motion to Strike Affidavit in Support of Motion (Dkt. 161) is

DENIED.

3.      Defendant's Motion to Strike Response to Motion (Dkt. 162) is DENIED.

4.      Defendant's Motion for Judgment as a Matter of Law, New Trial or in the

Alternative to Alter or Amend Judgment in the Form of Remittitur (Dkt.

146) is GRANTED in part and DENIED in part. The motion is granted with

respect to amending the judgment in the form of a remittitur and is

otherwise denied.

5.      The Judgment dated October 27, 2011, (Dkt. 132) is WITHDRAWN.

6.      Plaintiff shall have twenty days from the date of this Order to accept or

reject the remittitur reducing the award to $2,238,899 for past and future

economic damages, for a total award of $3,238,899.



DATED:  **July 18, 2012**.

Honorable Larry M. Boyle
United States Magistrate Judge